SEALED

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | Case No. /2cr 10189 |
| ) | |
| v. ) | |
| ) | 18 U.S.C. §371 (Conspiracy) |
| ) | 18 U.S.C. §§1030, 2 (Computer Fraud) |
| ANDREW JAMES MILLER ) | 18 U.S.C. §§1029, 2 (Access Device Fraud) |
| ) | 18 U.S.C. §§982, 1029 (Criminal Forfeiture) |
| Defendant ) | |
| ) | |

## INDICTMENT

The Grand Jury charges:

## INTRODUCTION

At all times relevant to the charges in this Indictment:

1. ANDREW JAMES MILLER, a.k.a. "Green," "man," "manual," "libuuid," "news," "asfjp," lived in Lancaster, Pennsylvania, and Devon, Pennsylvania. He was a member of a computer hacking group known as the "Underground Intelligence Agency" ("UIA").

2. "Intel," an unindicted co-conspirator, lived in New York, New York and Boston, Massachusetts. He was also a member of the UIA.

3. A "backdoor" refers to a hidden method of obtaining unauthorized remote access to a computer. It typically works by allowing a hacker to use a special (or "magic") password or other actions to bypass security measures and gain continual and unauthorized access to a remote computer. Backdoors typically provide the attacker with access to the "root" (i.e., administrator-level) account for the computer.

1

## COUNT ONE
### Conspiracy
### (18 U.S.C. § 371)

4.      The Grand Jury realleges and incorporates by reference the allegations in Paragraphs 1 through 3 of this Indictment, and further charges that:

5.      From approximately 2008 through approximately November 2011, in the District of Massachusetts and elsewhere, the defendant,

### ANDREW JAMES MILLER,

and others known and unknown to the Grand Jury, did knowingly and intentionally conspire to commit the following offenses against the United States:

(a)      Computer Fraud (18 U.S.C. § 1030(a)(2)):  intentionally accessing a computer without authorization and exceeding authorization, and thereby obtaining information from a protected computer, the offense being committed for purposes of commercial advantage and private financial gain and in furtherance of a criminal and tortious act in violation of the Constitution and laws of the United States or of any state, and the value of the information obtained exceeding $5,000, in violation of 18 U.S.C. §§ 1030(a)(2)(C), 1030(c)(2)(B)(i)-(iii);

(b)      Computer Fraud (18 U.S.C. § 1030(a)(5)(A)):  knowingly causing the transmission of a program, information, code, and command, and as a result of such conduct, intentionally causing damage without authorization, to a protected computer, in violation of 18 U.S.C. §1030(a)(5)(A).

(c)      Access Device Fraud (18 U.S.C. §1029(a)(2)): knowingly, and with intent to defraud, trafficking in and using one or more unauthorized access devices during a one-year period, that is, unauthorized log-in credentials, and by such conduct obtaining

2

things of value aggregating $1,000 or more during that period, said conduct affecting interstate and foreign commerce, in violation of 18 U.S.C. §1029(a)(2).

(d)     Access Device Fraud (18 U.S.C. §1029(a)(3)): knowingly and with intent to defraud possessing fifteen or more unauthorized access devices, said conduct affecting interstate and foreign commerce, in violation of 18 U.S.C. §1029(a)(3).

## MANNER AND MEANS

6.     MILLER and other members of the conspiracy remotely, surreptitiously, and without authorization, installed "backdoors" onto computer servers and created "magic passwords" that provided "root" access to these compromised servers.

7.     MILLER and other members of the conspiracy used this access to obtain users' log-in credentials, such as their usernames and passwords.

8.     MILLER and other members of the conspiracy used these stolen log-in credentials and "magic passwords" to obtain unauthorized access to the compromised computers.

9.     MILLER and other members of the conspiracy sold, or otherwise transferred, these "magic passwords" and other stolen log-in credentials to others, including to an undercover agent from the Federal Bureau of Investigation ("FBI").

## OVERT ACTS

The defendant committed the following overt acts within the District of Massachusetts and elsewhere:

### Sale of Access to RNKTel.com

10.     On or about October 21, 2010, during an online "chat" with Intel, MILLER said that they could make a significant amount of money selling access to computer networks to third parties.

3

11.     On or about February 15, 2011, during an online chat with Intel, MILLER offered to sell to an undercover FBI agent located in Boston, Massachusetts ("FBI UC") log-in credentials that would provide unauthorized access to a computer network that supported a series of domains or websites, including "RNKTel.com." RNKTel.com is the domain name owned by RNK Telecommunications, Inc., a telecommunications provider headquartered in Dedham, Massachusetts, with its computer servers located in the District of Massachusetts.    These computer servers hosted websites and were connected to the internet.

12.     On or about February 26, 2011, during a three-way online chat with Intel and the FBI UC, MILLER described how he installed a "backdoor" on the RNK computer network in 2007 or 2008.  MILLER then pasted network information into the chat to demonstrate this initial access. MILLER also described information he had discovered on the RNK network, what steps the FBI UC should use to avoid being detected while on the network, and how the FBI UC could exploit this access.

13.     During that February 26, 2011 chat, MILLER offered, for $1,000, to sell to the FBI UC root access to RNK's computer network and agreed to transfer additional user names and passwords that would allow further access to the RNK network.  MILLER instructed the FBI UC to make two $500 payments through Western Union, addressed to "Andrew Miller," in Lancaster Pennsylvania.

14.     On or about February 28, 2011, after the FBI UC transferred $500 to MILLER via Western Union, MILLER provided the FBI UC with the backdoor credentials and a list of hundreds of usernames and passwords that allowed root access to the RNK network. The FBI UC then sent the remaining $500 payment to MILLER via Western Union.

4

**Sale of "Database Dump"**

15.     On or about March 11, 2011, during a three-way online chat with Intel and the FBI UC, MILLER offered to sell the FBI UC a file of login credentials obtained from a raw "database dump" for $1,200.  MILLER instructed the FBI UC to send the money, via Western Union, to "Andrew Miller" at "the same location" as the previous payment.

16.     On or about March 14, 2011, after the undercover agent sent MILLER $600, MILLER electronically transferred a file to Intel, who then transferred it to the FBI UC.  The file contained network access user names and passwords for many companies and institutions, including the University of Massachusetts-Amherst.  This account access information allowed unauthorized access to a UMASS database.

17.     On or about March 22, 2011, the FBI UC sent the remaining $600 to MILLER, via Western Union.

**Sale of Access to CPB Group**

18.     On or about April 16, 2011, during an online chat with Intel and the FBI UC, MILLER offered to sell the UC, for $1,000, log-in credentials for a computer network owned by Crispin Porter and Bogusky, Inc. ("CPB Group"), an advertising and digital agency in Denver, Colorado.  The CPB Group network contains databases for many large, national businesses.

19.     During that April 16, 2011, chat, MILLER described his intrusion into the CPB Group network.  He also transferred to the FBI UC user names and passwords that allowed access to four CPB Group computer servers, including its mail server and two database servers. In return, the FBI UC wired $1,000 to MILLER, via Western Union.

### Attempted Sale of Access to Government Super Computer

20.     On or about April 16, 2011, in an online chat with Intel and the FBI UC, MILLER stated that he accessed, earlier that morning, two government super computers associated with the "nersc.gov" domain. "Nersc.gov" is the domain name for the National Energy Research Scientific Computing Center, which provides computing resources for the United States Department of Energy, and which is located in Oakland, California.

21.     During that April 16, 2011 chat, MILLER stated that he had installed a backdoor into, and had a reliable way to re-gain access to, several government networks. MILLER then pasted a network notification banner and file system information into the chat to demonstrate his access to nersc.gov.

22.     On or about April 30, 2011, during an online chat, Intel asked MILLER if he was ready to meet with the undercover agent to sell access to a government (or ".gov") domain. MILLER replied that he still had access to those networks.

23.     On or about May 6, 2011, during a chat with Intel and the FBI UC, MILLER stated that he and his "partner" had access to approximately half of the top 500 super computers. MILLER added that he also had "root" access to some of those super computers in addition to having access credentials to the network. MILLER stated that most of the sites were "gov/edu" type domains.

24.     On or about July 15, 2011, MILLER offered to sell the FBI UC, for $50,000, log-in credentials to a series of computer networks that would enable remote access to the domain "nersc.gov."

All in violation of 18 U.S.C. Section 371.

6

## COUNT TWO
## Computer Fraud
## (18 U.S.C. § 1030(a)(2))

25.     The Grand Jury realleges and incorporates by reference the allegations in Paragraphs 1-3 and 6-24 and further charges that:

26.     From approximately 2008 through approximately November 2011, in the District of Massachusetts and elsewhere, the defendant,

### ANDREW JAMES MILLER,

and others known and unknown to the grand jury, intentionally accessed a computer without authorization and exceeded authorization, and thereby obtained information from protected computers -- specifically, computers belonging to RNK Telecommunications -- the offense being committed for purposes of commercial advantage and private financial gain and in furtherance of a criminal and tortious act in violation of the Constitution and laws of the United States or of any state, the value of the information obtained exceeding $5,000.

All in violation of 18 U.S.C. §§1030(a)(2)(C), 1030(c)(2)(B)(i)-(iii), 2.

7

## COUNT THREE
### Computer Fraud
### (18 U.S.C. § 1030(a)(5))

27.     The Grand Jury realleges and incorporates by reference the allegations in Paragraphs 1-3 and 6-24 and further charges that:

28.     From approximately 2008 through approximately November 2011, in the District of Massachusetts and elsewhere, the defendant,

### ANDREW JAMES MILLER,

and others known and unknown to the grand jury, knowingly caused the transmission of a program, information, code, and command, and as a result of such conduct, intentionally caused damage without authorization, to a protected computer belonging to RNK Telecommunications.

All in violation of 18 U.S.C. §§1030(a)(5)(A), 2.

8

## COUNT FOUR
### Access Device Fraud
### (18 U.S.C. § 1029(a)(2))

29.     The Grand Jury realleges and incorporates by reference the allegations in Paragraphs 1-3 and 6-24 and further charges that:

30.     From approximately October 2010 through approximately October 2011, in the District of Massachusetts and elsewhere, the defendant,

### ANDREW JAMES MILLER,

and others known and unknown to the Grand Jury, did knowingly, and with intent to defraud, traffic in and use one or more unauthorized access devices during a one-year period -- that is, unauthorized log-in credentials -- and by such conduct obtained things of value aggregating $1,000 or more during that period, said conduct affecting interstate and foreign commerce.

All in violation of 18 U.S.C. §§ 1029(a)(2), 2.

## FORFEITURE ALLEGATIONS
### (18 U.S.C. § 982, 18 U.S.C. § 1029 – Criminal Forfeiture)

The Grand Jury further alleges that:

31.     Upon conviction of one or more of the offenses alleged in this Indictment, the

defendant,

### ANDREW JAMES MILLER,

shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(2)(B), any property constituting,

or derived from, proceeds obtained directly or indirectly as a result such violations.

32.     Upon conviction of one or more of the offenses alleged in Counts One and Four

of this Indictment, the defendant,

### ANDREW JAMES MILLER,

shall forfeit to the United States, pursuant to 18 U.S.C. § 1029(c)(1)(C), any personal property

used or intended to be used to commit such violations.

33.     If any of the forfeitable property, as described in paragraphs 31 and 32 above, as a

result of any act or omission of the defendant:

      a.     cannot be located upon the exercise of due diligence;

      b.     has been transferred or sold to, or deposited with, a third person;

      c.     has been placed beyond the jurisdiction of the Court;

      d.     has been substantially diminished in value; or

      e.     has been commingled with other property which cannot be subdivided
          without difficulty,

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C.

§ 982(b) and 18 U.S.C. § 1029(d), to seek forfeiture of any other property of the defendant up to

the value of the property described in subparagraphs a through e above.

All pursuant to 18 U.S.C. §§ 982 and 1029, and Rule 32.2, Federal Rules of Criminal

Procedure.

A TRUE BILL

Grand Jury Foreperson

Adam J. Bookbinder
Assistant United States Attorney

Mona Sedky
Trial Attorney, U.S. Dept. of Justice

DISTRICT OF MASSACHUSETTS                    June 13, 2012

Returned into the District Court by the Grand Jurors and filed.

Steve York

Deputy Clerk                                              1:24 pm

11